## Sarah Smith, Appellee, v. People's Life Insurance Company, Appellant.

INSURANCE, § 490*—*when fraud in procuring release shown.* Fraud in the procurance of a release of a life insurance company from liability on a life insurance policy was established where it appeared that the policy had been running for three years and was, by its terms, incontestable after one year, and the evidence of plaintiff tended to show that the beneficiary had never read the policy and did not know it contained the incontestable provision; that an agent of the insurer went to the beneficiary shortly after the death of insured and told her that her claim had been rejected because there had been a misrepresentation of facts when the application for the policy was made and that the company was not liable but would pay her one-fifth of the policy; that he increased his offer, finally telling her she would have to sign the release and accept two-fifths of the amount of the policy or sue the company and get nothing, and that she finally accepted the money and signed the release and defendant's agent denied making such statements.

Appeal from the Circuit Court of Vermilion county; the Hon. WALTER BREWER, Judge, presiding. Heard in this court at the October term, 1917. Affirmed. Opinion filed April 19, 1918.

**Statement by the Court.** Sarah Smith brought suit in assumpsit in September, 1915, against the People's Life Insurance Company upon a life insurance policy issued on September 12, 1912, by the defendant on the life of one Ruby Hutchinson, for $500. The declaration averred that the insured died April 7, 1915; that plaintiff was the beneficiary; that the policy was issued to and held by the insured until her death; that all premiums had been paid; that April 9, 1915, an agent of defendant obtained the policy from the plaintiff stating it was necessary to send it to defendant and that the insured had complied with all the terms of the policy. The defendant filed seven pleas, among them being pleas of release

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

by deed, surrender of the policy and satisfaction of the same by the payment of $200, and that the policy was obtained by fraud in that the answers in the application and medical examination were untrue.

Replications were filed setting up fraud and intimidation in obtaining the surrender of the policy and the release. A demurrer was sustained to the replications to some of the pleas, whereupon the cause was transferred to the chancery side of the docket, and a bill filed alleging the facts averred in the declaration, and that the policy contains a provision under which it became incontestable after one year from its date, if the premiums were paid; that an agent of defendant represented to complainant on April 9, 1915, that it was necessary to surrender the policy in order to make a settlement and that it would be returned to her upon making proof of death, and that the sum of $500 would be paid to complainant; that proofs of death were made and all conditions of the policy complied with and complainant did not come within any of the exceptions mentioned in the policy; that complainant had never read the policy and had no knowledge of the incontestable provision; that she had received $200 and that the defendant had obtained a release from her by fraud. The bill prayed that the release be declared null and void except as to the payment of the sum named therein, and that the defendant be decreed to pay the remaining $300 and interest and for general relief.

The defendant answered the bill, neither admitting nor denying its allegations, except that it denied the reception of proofs of death and the allegations of fraud, and stating that the release was knowingly executed without any fraud and that the policy was obtained by fraudulent representation.

The cause was referred to the master in chancery, who reported the evidence with his findings: That there was no honest dispute about the validity of the

claim and that the agent of defendant represented to complainant that there were false representations in the application which vitiated the policy, and took advantage of the mental and financial condition of complainant to obtain the execution of the release by representing that the claim had been rejected, when the policy was in fact incontestable at the time of the death of the insured. The defendant filed exceptions to the master's report which were overruled by the court and a decree entered setting aside the release except as to the amount paid, and ordering that defendant pay the complainant $300 with interest thereon at 5 per cent from May 19, 1915. The defendant appeals.

WALTER H. ECKERT and LINDLEY, PENWELL & LINDLEY, for appellant; WALTER C. LINDLEY, of counsel.

L. A. CRANSTON, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

The appellant issued its policy on the life of the insured September 1, 1912. It contains the provision: "This policy shall be incontestable, after one year from its date of issue, for the amount due, provided premiums have been duly paid, except, as herein provided, for military or naval service in time of war." The agent who took the application also collected the premiums monthly, collecting the last one the day before the insured died from pneumonia. The insured died April 7, 1915. The insured had not been engaged in war or naval service, hence the policy was incontestable for any reason at the time of her death. The second day after the death of the insured the agent of appellant, who procured the application and collected the premiums, went to the residence of the beneficiary and obtained from her the policy, telling her it would

be a week or ten days before she received payment.

Appellant itself made settlements with beneficiaries for deaths of those insured, but sent the checks to the local agents to deliver to the beneficiaries. The local agent of appellant notified appellant of the death of the insured, and the appellant sent blank proofs of death to him and proofs of death were made as required by the policy. On the evening of May 18, 1915, Andrew Myhrum, an agent of appellant, went to the residence of appellee with the local agent, with a release under seal, in which the appellee, in consideration of $200 to be paid to her within three days after the execution of the release, released and discharged appellant from all liability under the policy on the life of the insured.

The evidence tends to show that appellee had never read the policy and did not know it contained the incontestable provision; that Myhrum went to appellee with the release already prepared and told her that her claim had been rejected because there had been a misrepresentation of facts when the application for the policy was made and that the company was not legally liable under the policy and did not owe her anything but it had, through sympathy, sent him with $100 to give her. The evidence also shows that appellant began to cry and then Myhrum raised the offer to $125, then to $175, and got so sympathetic that he finally said he would make it $200 by giving her $25 out of his own pocket, and that she could take that or a lawsuit, which might last ten years and in which she would be beaten; that he came back the next morning and asked her if she was ready to take the offer and sign the paper, when she told him that she had not seen any person yet, and he replied, you can either sign this paper or go ahead and sue the company: "If you want the money sign this paper, if you don't you won't get anything," and thereupon appellee signed the release and received the $200. Myhrum

denies making these statements, but the preponderance of the evidence is with appellee, and appellant, although it alleged in its pleas and answer that the policy was obtained by fraud, virtually admits there was no basis for such representation by not offering any evidence tending to sustain it. The appellant took advantage of the situation of appellee to procure her signature by intimidation and fraud when there was not a shadow of a defense to the claim as appears from the evidence, since the policy had become incontestable, although appellee did not know that fact. The appellant procured the policy from the beneficiary the second day after the death of the insured and then sent an authorized agent, who represented to appellee that the policy was void because of misstatements in the application, when it knew the policy had become incontestable. The only defense made to the claim is that appellee had, by an instrument under seal, released for $200 a claim for $500 to which there was no defense. The appellant argues that the trial court did not find that the release was obtained by fraud. The master found that the release was obtained by fraud, the appellant excepted to that finding and the trial court overruled that exception. The company and its agent made such representations fraudulently, when they knew that the representations so made were not a defense to the policy, and the fact that there was no defense was not known to the beneficiary. The decree is sustained by the evidence and is affirmed.

*Affirmed.*